The next case on our call of the docket is Agenda, second case is Agenda number 11, number 110406, Thomas Vincent, Appellant v. Alden-Park Strathmoor, Napoli Council for the Appellant. May it please the court, counsel, my name is Frank Perricone and I represent the administrator of an estate of a deceased nursing home resident. We're here before the court on a question of law, a certified question, whether common law punitive damages are available in an action brought by the representative of the estate of a deceased nursing home resident based on the Survival Act for willful and wanton violations of the Nursing Home Care Act, which caused injuries that ultimately claimed her life. Our main position is straightforward, I believe, that Section 3-603 of the Nursing Home Care Act provides a remedy of common law punitive damages. Since the claim for punitive damages is statutorily based by the Nursing Home Care Act under this court's decision of National Bank v. Norfolk Western, the claim for punitive damages passes unabated to the estate of the nursing home resident. What I believe needs to be recognized early on is that this cause of action is statutory. It's a cause of action for willful and wanton violations of the Nursing Home Care Act, which caused Marjorie Vincent injuries. The conduct we are alleging that occurred is equivalent to a felony of criminal neglect by way of statute. Section 3-603 provides that a resident may maintain an action under the Act for any other type of relief, including injunctive and declaratory relief permitted by law. Mr. Perricone, does that statute have to have an express punitive damage provision? It's our position that what the legislature did, instead of listing each and every remedy or form of relief for a nursing home resident, due to the legislative history and intent of this Act to protect nursing home residents, that it decided to make it broad to encompass all forms of relief and remedies. So you do not think that National Bank, the case you already mentioned in Froud, stands for the proposition that there has to be express language in the statute? Under the specific provisions of the Nursing Home Care Act, its intent and legislative history, no. I agree the legislature could have listed each and every remedy available in the Act. The intent was to give the nursing home resident the broadest possible array of remedies permitted by law. The Nursing Home Care Act was passed in 1979 amongst concern and reports of degrading, improper and inadequate treatment of nursing home residents by nursing homes. There was a recognition that nursing home residents are among the most vulnerable of our citizens and needed to be protected. Upon passage of the Nursing Home Care Act, it became clear, articulated public policy of this state, that it would not be tolerated that nursing home residents be abused or neglected. In order to do that, the legislature passed sweeping reforms. It gave nursing home residents a Bill of Rights, one of which is to be free from abuse and neglect. Recognizing that government cannot be in a nursing home 24 hours a day, the legislature conferred upon residents private attorney general status. The legislature gave a private right of action under the Nursing Home Care Act against nursing homes. At first, the legislature passed the provision of treble damages, three times actual and three times compensatory damages, in addition to attorney's fees. The treble damages provision has since been repealed and it's now one-time actual damages or compensatory damages. The Act did something unique. It made nursing homes liable for the conduct of their employees, including intentional conduct. That is something that was not part of common law. Another difference in this act, among many other acts, is that nursing home residents were encouraged to press claims. Litigation for violation of acts were viewed by the legislature as an engine of reform. In addition, the legislature gave the Illinois Department of Public Health broad statutory powers to regulate and enforce the nursing home care act. Coming out of this nursing home care act was this. Nursing home residents were now a protected class, protected from those that at one time, amongst the reports, were providing inadequate, degrading, and improper treatment. We view section 3-603 in this context, in light of that history of the nursing home care act, that the legislature gave the broadest possible arsenal to nursing home residents to enforce violations of the act. Again, one of the violations of the act was to be free from abuse and neglect. This court in Harris, in the year of 1986, before the repeal of trouble damages, had occasion to consider section 3-602, which provided for trouble damages, a form of punitive relief, and section 3-603, which the court indicated provided a remedy of common law punitive damages. The nursing home in that case was sued for both trouble damages and common law punitive damages. The nursing home's position was that we're going to get hit, potentially, with two forms of punitive damages. Trouble damages under 602, and common law punitive damages brought via 603 of the nursing home care act. And that deprives us of due process because we are being found liable for punitive damages based on a single injury, and that violates the single injury rule and deprives us of due process. This court said no, that section 3-603's remedy of common law punitive damages was an election, a choice that plaintiff was entitled to bring in a lawsuit, also entitled to bring trouble damages in the lawsuit, but at the conclusion of the case, even after judgment, the plaintiff would be given an election, whether to seek, whether to have judgment entered on the trouble damages or on the common law punitive damages. We believe the Harris case is very instructive with respect to 3-603. We believe that the court has at least acknowledged that that section does provide the remedy of common law punitive damages, 3-603 refers to a resident may maintain an action under this act for any other type of relief. That section very easily could be read, a resident may maintain an action under this act for punitive damages. Any other reading of section 3-603, the words under this act, would be turned into meaningless surpluses. And we believe the legislature had the right to, and it's prerogative, to give the nursing home resident every arsenal available under the law. What impact is the fact that this is a survival action, this isn't an action by the resident? And what about the fact that some actions don't survive for parties to bring claims? Is there a case that you have anywhere that addresses this issue? Yes, it's the National Bank v. Norfolk case that this court decided. What this court decided was that if a statute provides for punitive damages, the Survival Act will permit the representative of the estate to maintain that action unabated without, it would not abate. Any statute? No. The statute needs to be, in our opinion, related to public safety and also provide for a form of punitive damages. Under those circumstances, it would pass unabated to the estate. In National Bank, the statute was the Public Utilities Act, which provided that upon willful violation of the act, the court may award punitive damages. In the Nursing Home Care Act, section 3-603, in our opinion, provides for the remedy of punitive damages being incorporated into the act. And the Nursing Home Care Act also is an act of protection, protecting nursing home residents. Counsel, when we look at the legislative history of the Nursing Home Care Act, we see that at one point there were trouble damages that were allowable, and then that was removed. An argument could be made that that's a statement by the legislature, that damages, punitive damages, are not available under the, this idea of it's not specifically expressly in the statute because it was removed. Can you address that? Yes. A close reading of that legislative debate, it would be Senator Falwell and Representative Tenhouse, shows that the intent was not to remove punitive damages or a punitive aspect from the Nursing Home Care Act. The intent was merely to level the playing field among providers who provide care and treatment. Healthcare providers. Senator Falwell said the reason we are eliminating punitive damages is that nursing homes are experiencing increased insurance rates and at times are having a hard time getting insurance. So what we want to do is to level the playing field. So I think that's a good argument. Makes sense. Three times negligent, three times actual damages in the Nursing Home Care Act for negligent conduct, whereas in the hospital if that patient fell and was injured, it would be one-time actual conduct. Compensatory damages. So in theory, by removing the trouble damages, insurance rates should go down and there should be more availability of insurance. He certainly was not talking about all, he was not talking about punitive damages or claims for punitive damages, because those are very rare in our circuit courts. Less than 1% of cases in circuit courts, the issue of punitive damages for negligent conduct is a rare one.  And so negligent damages for reprehensible conduct is even submitted to the jury regardless of outcome. Another telltale sign of Senator Falwell's comments during the debate, the Senator said the elimination of the mandatory provision, that would be trouble damages, in no way prevents a judge or jury from awarding punitive damages in any amount, even in excess of a year. And that would be in excess of triple actual damages if the actions of the nursing home or any of its employees or agents are deemed to be intentional or willful and wanton or grossly negligent. What the Senator, in our opinion, was talking about is the imputed vicarious liability of actions of nursing home staff to the nursing home itself. And that is, if there is any law absent complicity on the part of the employer, there can be no punitive damages. In fact, I believe that is embodied in Illinois Pattern Jury Instruction 36.02. However, under the Nursing Home Care Act, Section 3-601, even intentional conduct is imputed to the nursing home itself. So we believe that Senator Falwell was saying, no, punitive damages are still alive and well, when he indicated that the mandatory provision in no way prevents a judge or jury from awarding punitive damages in any amount if the actions of the nursing home employees are deemed intentional. Mr. Pericone, is there any import to the fact that there has been three times since the repeal of the provision with respect to treble damages, three attempts to put in specific language allowing for punitive damages that have been thwarted? Two of the attempts were to revive the treble damage provision. And that would go expressly against the legislative intent of removing treble damages. So we say that really has nothing to do with punitive damages. It has everything to do with increased insurance rates and availability of insurance. That second attempt, or another attempt, dealt with punitive damages in a survival act that also included the wrongful death act. In other words, that statute also, that bill was an attempt to also amend the wrongful death act for the court to award punitive damages in a death case and have that survive. We believe it's equally as plausible that that statute was rejected by the General Assembly because of the wrongful death provision. And in our opinion, it was unnecessary because of Section 3-603 of the Nursing Home Care Act. So it's not a straight-up section to repeal. It also provided for wrongful death relief, which is contrary to this Court's longstanding rule that there are no punitive damages in a wrongful death act. So we believe the legislature could have rejected that statute on that basis alone. Also, we believe it was unnecessary under 3-603. Mr. Perrico, in the line of cases beginning with, I think, Mattie Ossofsky and then Froud and Belwig, I think we've continually held that punitive damages claims do not survive the death of the injured party. And it's specifically in Froud we indicated that the legislature, in revising the act, had the opportunity to change that if they saw fit to do so. And the fact that they did not seems to confirm that our interpretation was correct. Would you comment on that? Yes, we believe those cases, Froud and Mattie Ossofsky, have no relevance. In this case, we believe National Bank controls because we believe the provision for punitive damages is incorporated into the act via Section 3-603. But in National Bank, of course, it's clearly set out in the Public Utilities Act that punitive damages are allowable. It's not so set out in the Nursing Home Act, though, is it? The words punitive damages do not appear. We believe they are incorporated into the statute by Section 3-603, the words under this act. Further, the two cases Your Honor brought up were common law actions for damages. This is not a common law action. This is a statutory action based on the Nursing Home Care Act for willful and wanton violations causing injury to Marjorie Vinson. So we believe that the two cases Your Honor was referring to have no relevance, that it's the National Bank case that provides the authority for the claim of punitive damages to survive. If there are no further questions, I see my time is up. Thank you. Thank you, Mr. Perricone. Ms. Jensen. Good morning. My name is Lisa Jensen, and I represent the APLE Alden Park Strathmore. May it please the Court, Counsel. Your Honors, for over 100 years, the law in Illinois has been the same, and that is that common law punitive damages are not recoverable under the Survival Act. In National Bank v. Norfolk and Western Railroad, this Court recognized only one very limited exception to that longstanding rule. That one exception provides that where a statute specifically provides for recovery of punitive damages as part of a comprehensive regulatory framework, the punitive damages will be deemed to survive the death of the plaintiff. The Nursing Home Care Act is not such a case, Your Honors. There is no language in the Nursing Home Care Act, quote, specifically providing for the recovery of punitive damages, and it must do so in order for such damages to be recoverable under the Survival Act pursuant to National Bank and its progeny. A closer look at the NHCA, which is the National Bank of Illinois National Bank of Illinois, and a close reading of the Act will clearly provide that there is no reference to punitive damages. It simply is not there. What I think is most compelling, Your Honors, is the fact that punitive recovery was provided in the Act prior to 1995, and that provision was repealed. When treble damages were repealed, no alternative language was inserted into the Act to specifically provide for the recovery of punitive damages. It simply does not exist in the Act. What plaintiff would have you do is try to construct, by patching together different portions of the Act, try to construct a reading of the Act that somehow allows for the recovery of punitive damages. But remember, under National Bank, simply allowing for recovery is not enough. The Act must specifically provide for it such that you can unquestionably determine, and that is the language that is used in the Act, that there is no alternative language that was used in National Bank, unquestionably determine that the legislature intended for punitive damages to be recoverable. I would contend that you can make no such determination by reading the very vague language that's contained in the other remedies provision of 3-603. After treble damages were repealed under 3-602, the only recovery available for a nursing home resident were actual damages costs and attorney's fees. Plaintiff would have you look at 3-603, the quote other remedies provision, that allows a nursing home resident to recover any other remedy available at law, and it gives the examples of declaratory or injunctive relief. It's important to remember that what we're talking about today is a certified question asking about whether punitive damages are recoverable under the Survival Act. So that the bulk of plaintiff's arguments that punitive damages can generally be recovered under the Nursing Home Care Act really are to no avail. If the court decides that punitive damages are generally recoverable under the Nursing Home Care Act, it must make a second step. And that is to decide, is it provided for so specifically under the Act that under National Bank, that punitive damages can be recovered under the Survival Act. And I would contend it does not. I'd like to address both of those issues, though, because I think the second district got it right when it ruled that the Nursing Home Care Act does not provide for the recovery of punitive damages under the Act. But I would contend that even if this court disagrees with me, that it can clearly conclude that even if it finds there is a general right to recover punitive damages, it cannot survive the death of a resident because it's not specifically set forth in the Act. Is that how you would distinguish the language in EADS and DARDEN? I would, Your Honor. First of all, I would like to point out that I think that the DARDEN case has been misread by a plaintiff as standing for the proposition that this court has ruled that punitive damages are recoverable under the Survival Act. And I think that that's a good point. And I would like to point out that under the Act and that they survive, there certainly was no such holding by this court in the DARDEN case. In DARDEN, all that was before the court was the issue of whether the repeal of treble damages can be applied retroactively. And this court went to great lengths to point out that all the repeal of treble damages did was affect a remedy available under the Act and not a substantive right, such that when it made a general comment at the end of its, at the end of its, its ruling, that after repeal of treble damages in general, a plaintiff can recover actual damages in attorney's fees under the Act and common law punitive damages. Number one, it wasn't specifically holding that common law punitive damages are recoverable under the Act. But secondly, that was mere dicta because the court had gone to great lengths to say that the remedies that are available are not at all punishable under the Act and that a remedy can be applied. Damages simply were not important to the court in that decision. And as such, that comment was pure dicta. But I think if you read it closely, you can see that what was being commented upon there is exactly what the court indicated in the Harris case. And that is under the Nursing Home Care Act, you have a provision after treble damages that allows for actual damages, costs and attorney's fees. And separate and apart from that, you have a provision after treble damages that allows for actual damages. And separate and apart from that, a plaintiff can bring a common law action for willful and wanton violations of the Act. If you look at the language that the court uses in Harris, it goes to great lengths to talk about the statutory remedy and the common law remedy. The Harris, the Harris court indicated at page 366 in concluding that the plaintiff can recover either treble damages under the Act or common law punitive damages, but not both, we do not imply that the trial court should require an election of remedies. Since the statutory remedy under 3602, that being treble damages, and the common law action for willful and wanton misconduct are not inconsistent, the election of remedies doctrine is inapplicable to this case. So clearly Harris was indicating that you have a statutory remedy, treble damages, and a common law remedy separate and apart from the Act, such that after treble damages were eliminated, the only action available to a resident for punitive damages is a common law remedy. And it's clear under Matschevsky and its progeny that common law punitive damages do not survive and cannot be recoverable under the Survival Act. The other remedies, the only hat that plaintiff has, the only thing that it can point to to try to argue that there's a specific provision for the recovery of punitive damages is 3602. And the other remedies provision simply is not specific enough to allow punitive damages to survive. I would argue that it's not even clear under the other remedies provision that punitive damages are even recoverable. So in the case of the Hamiltons Chand, which was a 5th district decision in 2002 where the court was asked to determine under the AIDS Confidentiality Act whether punitive damages are recoverable, a very similar other remedies provision was contained in the AIDS Confidentiality Act. It allowed for such other relief, including an injunction, as the court may deem appropriate. The court in analyzing that Act said that that did not allow for the recovery of punitive damages. And it pointed out that the only way to recover punitive damages is to provide a remedy. It pointed out that punitive damages are traditionally disfavored at law, such that you cannot read in or write to recover punitive damages where they are not specifically provided for. That is exactly what is happening here in the Nursing Home Care Act. I also point out in my brief, Your Honors, that when the legislature specifically wants punitive damages to be a recoverable remedy, they put it in the statute. There are numerous examples of statutes that have been enacted by our courts that provide for punitive damages. So there can be no doubt that unquestionably the legislature wanted punitive damages in the statute. And they did not do that here. They left punitive damages out. I would contend that the fact that they could have put them in and the fact that punitive damages are disfavored at law would lead to a conclusion that they are not recoverable under the Act. That, in addition to the Doe v. Chan decision. But even if this Court were to conclude that they somehow are recoverable under the Act, again, they are not specifically provided for. And for that reason, they cannot survive the death of the resident. And for that, I would ask the Court to review the Dunkevage v. Allen case, which was the first district case that we discussed in our brief. In Dunkevage v. Allen, they survived the death of a plaintiff such that they could be recovered under the Consumer Fraud Act. Under the Consumer Fraud Act, there was an other remedies provision, almost identical to the other remedies provision in the Nursing Home Care Act. And the Court indicated, and specifically that said, the Court may award actual damages, quote, or any other relief which this Court deems proper. The other remedies language was not the type of specific statutory authority for punitive damages that the National Bank Court required in order for punitive damages to survive. And what is very important about Dunkevage, Your Honors, is the fact that the Dunkevage Court went on to point out that the fact that they had previously ruled that punitive damages were available under that Act in general, did not translate to a ruling that they were available in a Survival Act for the simple fact that they were not specifically provided for in that statute. The same analysis should be applied here, where there is no specific authorization for trouble damages. I believe the legislative history unequivocally supports this position. If you look at the legislative history, you will see that it originally, that the Act originally provided for trouble damages. And as this Court in Harris pointed out, they interpreted the legislative history to say that trouble damages were put into the statute to encourage people to bring causes of action under the Nursing Home Care Act. But then they repealed that provision. And the legislative history indicates they repealed that provision because the trouble damage provision, the punitive damage provision, was having the unintended consequence of driving up the cost of nursing home care because it was making it so that nursing homes had to expend extreme amounts of money on insurance coverage or could not get it at all. So the legislature made the informed decision to take out the punitive damage provision such that that unintended consequence would not take effect. They did not put back in any other type of punitive damages remedy. Then House Bill, I'm sorry, then House Bill was proposed to specifically, House Bill 3391, was proposed to specifically provide for punitive damages and to provide that they would be recoverable under the Survival Act. If, as plaintiff would have you believe, the Act already provided for punitive damages, and if they were not confident that that provision was specific enough to allow it to survive, there would be no reason for the legislature to have, for legislators to have proposed House Bill 3391. They proposed that bill because they understood that per national bank, the language of the statute was not specific enough to, A, allow for punitive damages to be recovered or, B, to allow for it to survive the death of a plaintiff. This act has been in place for a number of years. The legislature has already spoken on the issue. They have decided that they do not feel that punitive damages need to be recoverable under the Act because of the unintended consequences that it's having on insurance coverage and driving up the costs of nursing home care, and secondly, because they do not intend to have punitive damages survive the death of a plaintiff. This Act has been extensively revised very recently. Only a few months ago, Public Act 1372 was enacted, which provided extensive revisions to the Nursing Home Care Act. They made no changes to the damages provision. They did not make any changes to the damages provisions at all. What they did was refocus their enforcement mechanisms to increase the number of enforcement personnel, to increase the amount of civil penalties, to increase the amount of staffing that are required at nursing homes. And I would contend, Your Honors, that the reason they are not focusing on wanting to put punitive damages into the statute is for the exact same reason they took treble damages out of the statute to begin with. They don't want to drive up the cost of nursing home care by making insurance coverage unaffordable or unobtainable. And they believe that they can achieve the same purpose of increasing the quality of care for nursing home residents by increasing civil enforcement remedies that do not affect the insurance coverage component of that, and such that that will not drive up the cost. That is what the legislative history proposes here. And I would contend that you do not have a situation where, A, the statute provides for the survivability of punitive damages, or where the legislature has ever intended that the survivability of punitive damages applies to the Nursing Home Care Act. There simply is nothing in the Act or in the legislative history that would indicate that punitive damages are of a certain nature that they would survive under the Nursing Home Care Act. For that reason, I would ask that this Court affirm the well-reasoned decision of the Second District and answer the certified question in the negative. I have just a procedural question for you. Sure. It seems here that the plaintiff never filed a motion seeking leave to amend the complaint asking for punitive damages pursuant to 2-6041 of the Code of Civil Procedure. Instead, in his complaint, he resigned and served the right to seek punitive damages, and then the defendant moved to strike that. Do we have any problems with that, the fact that the plaintiff never sought punitive damages as far as the procedure is concerned here? Your Honor, I think that there certainly could be an argument that the issue was not right. However, I think the certified question is framed such that the question is squarely before the Court on whether those damages are even available, and whether they are available such that the plaintiff would have been able to make that finding in the first instance such that if there is no right to recover punitive damages under the Nursing Home Care Act because they do not survive, then there would be no reason for the plaintiff to seek leave to amend the complaint to ask for it, which is why I moved to strike his reservation of rights, because I felt there was no right to reserve because the plaintiff had passed away and her right to punitive damages did not survive. But clearly, had the plaintiff not asked for punitive damages and had not included that statement, we wouldn't be here. That's correct, Your Honor. Thank you, Ms. Jensen. Mr. Perricone. Mr. Perricone, would you comment on that last question that I asked? You obviously didn't raise it as an objection. Perhaps you forfeited any concern or question as to whether this was right for adjudication. It was a motion to dismiss or strike the punitive damage claim, so we fought it in the trial court and appellate court. And we're here before the court on the certified question. I do agree with Your Honor that we reserved our right, but it was moved to be stricken. The question, I think, is this. Given the history and the intent that the legislature had in passing the Nursing Home Care Act to protect the most vulnerable among our society, does the legislature have any intention of passing the Nursing Home Care Act to protect the most vulnerable among our society? Does the legislature have the right to pass a statute, 3-603, which gives nursing home residents all relief, all remedies permitted by law? We believe that is a legislative prerogative. And that statute indicates that that relief, that remedy is brought under the Act. Again, to rule that punitive damages are not incorporated into the Act is to turn the words under the Act into meaningless surplusage. The statutes which counsel relies on are the cases which counsel relies on where this court says those statutes weren't specific enough. Dovie Chan, Dunclavage, those statutes did not give the aggrieved person a right to maintain an action. Under the Act for the remedy. So the statutes merely gave the court discretionary or authority to award any other relief permitted by law. This statute in the Nursing Home Care Act is fundamentally different due to the fact that the legislature specifically intended to give residents the broadest array of remedies and relief under the law. By maintaining an action. With respect to the legislative debate, with respect to the treble damage provision, it is clear in our mind that the legislatures, the sponsors of that bill, fall well and ten hail by saying we are not eliminating punitive damages. The intent was not to remove punitive damages from the arsenal of the nursing home resident. All they were trying to do was to bring down insurance rates and make insurance available by removing the treble damage provision. It was viewed as being unfair where a nursing home who drops a patient and injures that patient pays three times actual damages or that hospital across the street drops that patient and only pays one time actual damages. That was the intent in removing treble damages from the provision. The level, the playing field. It could not be for punitive damages which require willful and wanton misconduct because punitive damages in Illinois state courts are very, very rare. Let's take a look at the state court where less than 1% of cases submitted to juries involve punitive damages regardless of the outcome. So it would be incongruous for the legislators to be speaking of insurance rates, yet on the other hand talk about cases in which less than 1% of cases submitted to juries involve punitive damages? No. They were trying to bring parity among healthcare providers. Mr. Perricone, Ms. Jensen argued, I hope I've tracked this correctly, I think it's the National Bank case, I forget now, but she said that in that case our court announced that it's a question of whether or not it is unquestionably determined by the language of the act that it survives. I don't believe the National Bank case stands. You heard that argument, right? I heard that argument. Do I have it right? Was it National Bank? If it was, it would be National Bank, but I am not of the opinion that unquestionably I believe the court needs to look at the statute and determine whether or not punitive damages have a statutory basis within the statute. Is the statute the type of statute that protects a group of citizens that needs protection? And in any event, the Nursing Home Care Act, like the Public Utilities Act, has provisions in it that it contemplates persons other than nursing home residents from bringing claims. They're representatives. Those sections are 3-606 and 3-608 of the Nursing Home Care Act. And the appellate court in Willis in interpreting the punitive damage provision of trouble damages in a survival action, that court said that unquestionably the legislature intended trouble damages, a form of punitive damages, to survive the death of the nursing home resident via the survival action based on the reasoning in National Bank. So we believe there is authority in the Nursing Home Care Act for punitive damages to survive via section 606 and 608 of the act. In any event, this court in Harris acknowledged that 3-603 provides for a remedy of punitive damages. So it's not as if we're coming before this court without any foundation or history, followed by Dardenne, and then the court in Harris in interpreting the punitive damages provision of pain and eads, which reaffirms, although not issues in the case, but reaffirms that punitive damages have a foundational basis in the Nursing Home Care Act. The language in 3-603, contrary to opposing counsel, is not vague. Given the purpose of the statute, before that pact was passed, there were reports in Illinois of degrading, improper, and unethical treatment. The Nursing Home Care Act was designed to protect residents of nursing homes. That being the case, the legislature provided every possible remedy arsenal to combat violations of the act. Again, our cause of action is statutory, based on willful and wanton violations of the Nursing Home Care Act with section 3-603, we are seeking, or will be seeking, the relief, if appropriate, of punitive damages. Again, the court, as your Honor indicated, would need to pass on it via the Code of Civil Procedure 2-604.1. We didn't get that far, but we believe willful and wanton violations of the act, if proven, subject the nursing home to punitive liability. Counsel, one other question on this section 3-603. When you look at that section as a whole, the last three words refer to, in describing other relief, it says permitted by law. So does that then take us back to where punitives are allowed, authorized as permitted by law elsewhere? It brings us back to, yes, common law punitive damages are permitted by law when a nursing home resident has been subjected to a willful and wanton misconduct. At that very moment of the injury via willful and wanton misconduct, that nursing home resident's right accrues under law to seek punitive damages. Have I answered your Honor's question? You answered it. For the reasons that we believe the legislature intended to provide nursing home residents with punitive damages via the Nursing Home Care Act, we would respectfully request this Court to answer the certified question in the affirmative. Thank you. Thank you. Thank you.